UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOANN FARMER MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | 13-192-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The plaintiff, Joann Farmer Morris, seeks judicial review pursuant to 42 U.S.C. § 405(g), of an administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB"). For the reasons stated herein, the Court will GRANT in PART and DENY in PART both Morris' Motion for Summary Judgment [R. 12], and that of the Commissioner [R. 13]. Accordingly, this case will be REMANDED for further proceedings.

**I**

Morris filed her application for DIB on April 7, 2011, alleging a disability beginning on December 30, 2010.[1] [Tr. 167-168.] She alleges that she is unable to maintain substantial gainful employment due to pain in her lower back, hip, leg, as well as arthritis, diabetes, high blood pressure, a coronary condition, a tear in her right knee, breathing problems, a sleep

---

[1] The Administrative Record actually includes three separate applications for DIB, dated December 1, 2010, February 1, 2011 and April 7, 2011. [Tr. 156-162; 163-166; 167-168.] The Court notes that both the Disability Determination and Transmittal form and the ALJ's decision indicate that her application date was November 19, 2010. [Tr. 12, 68.]

disorder, and renal insufficiency. [Tr. 14.] Her application was denied initially and upon reconsideration. [Tr. 69-80, 82-94, 105-107.] Morris requested a hearing which was conducted over video-conference before Administrative Law Judge ("ALJ") Don Paris, where the ALJ heard testimony from Morris, who was fifty-six years old as of the date of the ALJ's final decision. [Tr. 167.] Morris has an associate degree in business administration and medicine and has past relevant work as an admitting clerk, a medical assistant, receptionist, billing clerk, billing supervisor, referral clerk, billing secretary, and office manager. [Tr. 16-19.] Joyce Forrest, the vocational expert assigned to this case concluded that Morris could perform her past relevant work as an admitting clerk, billing clerk, referral clerk, and as an office manager, and the ALJ accepted that testimony. [Tr. 19.] On July 27, 2011, ALJ Paris issued a decision denying Morris benefits. [Tr. 12-19.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[2] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  20 C.F.R. § 404.1520(d).  Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.  Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled."   20 C.F.R. § 404.1520(e).  The plaintiff has the ultimate burden of proving compliance with the first four steps.  *Kyle v. Comm'r Of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010).   Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, the ALJ determined, at Step 1, that Morris had not engaged in substantial gainful activity since the alleged disability onset date.  [Tr. 14.]  At Step 2, the ALJ found that Morris had the following severe impairments:  "obesity; generalized osteoarthritis and other unspecified Arthropathies; diabetic neuropathy; status post repair of meniscus tear to the right knee in 2004 and lumbar disc disease." [*Id*.]  The ALJ found that Morris' other impairments were not severe but did still consider them in determining her RFC.  [*Id.*]  At Step 3, the ALJ concluded that Morris did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526)," so the analysis continued.  [Tr. 15.]  The ALJ concluded that Morris had a residual functional capacity (RFC) to "perform

sedentary work as defined in 20 CFR 404.1567(a)." [*Id.*] ALJ Paris noted the following limitations:

> The claimant has the residual functional capacity to occasionally lift and/ or carry 10 pounds, frequently less than 10 pounds; stand and/or walk two hours in an eight hour workday; sit a total of six hours in an eight-hour workday; only occasional climbing, climbing ramps and stairs, never climbing ladders, ropes and scaffolds; no more than frequent balancing; only occasional stooping, kneeling and crouching and never crawling. She should avoid concentrated to extreme humidity, fumes, odors and gases or chemicals and full body vibration and avoid even moderate exposure to all hazards such as unprotected heights or dangerous machinery.

[*Id.*] Finally, the ALJ adopted the vocational expert's opinion that Morris could perform her past relevant work and, hence, is not disabled. [Tr. 18-19.] The Appeals Council found no reason to upset this decision [Tr. 1-6] and Morris now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (*citing Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

4

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Morris raises two issues on appeal to this Court.  First, she argues that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Irwin.  [R. 12-2 at 3-6.]  Second, Morris submits that the ALJ failed to properly consider her own allegations of disabling pain. [*Id*. at 6-7.]

## A

Morris receives her medical care at the Family Medical Care Center where Dr. Irwin was her treating physician for about six years.  [R. 54.]  Morris also commonly received treatment from APRNs Stacey Smallwood and Suzann Smith.[3]  Morris argues that Dr. Irwin's opinions, contained in three separate RFC check-box questionnaires on Morris' arthritis [Tr. 376-380], diabetes [Tr. 381-385], and physical condition [Tr. 387-391], were not given the deference that they were entitled.  [R. 12-2 at 3-6.]  Morris first complains that the ALJ should have adopted Dr. Irwin's opinions in their entirety, and, second, that the ALJ further erred by not giving good reasons for not adopting these opinions.  [R. 12-2 at 3.]

**1**

In making a disability determination, the Social Security Administration considers all "medical opinions" in the case record. 20 C.F.R. § 404.1527(b).

> Medical opinions are statements from physicians … that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2). While the SSA considers all medical opinions, they are not all afforded equal weight. Medical opinions from treating sources are generally given more weight:

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Such treating physician's opinions on the nature and severity of impairments are given controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).[4] In deciding whether to give a treating physician's opinion controlling weight, the ALJ considers (1) the length of the treatment relationship, (2) the frequency of examinations, (3) the nature and extent of the treatment relationship, (4) the supportability of the medical opinion, (5) the consistency of the opinion and (6) the degree of specialization of the treating source, in deciding exactly how much weight is to be given to the opinion. 20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); *Turner v. Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544. If after considering

---

[3] The Court notes that an "APRN" is an Advanced Practice Registered Nurse.

these factors, the ALJ decides not to give weight to a treating physician's opinion then they must give "good reasons" for not giving that treating source's opinion controlling weight.  20 C.F.R. § 404.1527(c)(2).

The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule."  *Wilson,* 378 F.3d at 544 (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).  In the words of the regulation, the ALJ's explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

**2**

Morris argues that the ALJ should have adopted the entirety of Dr. Irwin's opinions and specifically faults the ALJ for failing to incorporate his opinions that she (1) should stand for no more than two hours in an eight hour workday, (2) sit for no more than two hours in an eight hour workday, (3) would be absent from work more than three times a month, and (4) that if Morris had a sedentary job, then her legs would need to be elevated for significant portions of time.  [R. 12-2 at 5; Tr. 378-380, 384.]  She also complains that the ALJ failed to provide "good reasons" for not giving Dr. Irwin's opinions more weight.

The ALJ did not adopt the opinions contained in Dr. Irwin's RFC assessments wholesale, but explained only that Dr. Irwin's arthritis RFC "is given partial weight inasmuch as it limits the

---

4   This cited provision is now located at 20 C.F.R. § 404.1527(c)(2).

claimant to essentially sedentary work activities as well."[5] [Tr. 18 (citations omitted).] The ALJ did not explicitly reference either the separate physical assessment RFC [Tr. 387-391] or diabetes RFC [Tr. 382-386], nor did he articulate why he did not adopt the opinions contained therein. In its briefing, the Commissioner attacks the supportability and consistency of Dr. Irwin's opinions, but these arguments were not presented in the ALJ's decision. As noted earlier, the good reasons rule exists to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (*citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013). If the ALJ does not provide his reasoning at the hearing level, then the purposes of this rule are undermined

      According to ALJ Paris, "after considering all relevant evidence of record…there [was] little evidence in the medical records to substantiate disabling symptoms greater than determined in [his] decision." [Tr. 17.] He "granted probative weight to the assessments of the state agency physicians who limit[ed] [Morris] to sedentary activities due to generalized arthritis, diminished muscle strength, pedal edema, limitations in range of motion and body mass index of 60." [*Id.*] He further granted probative weight to the assessment undertaken by Dr. Bress, which found that Morris needed to be "limited to a range of sedentary exertional work." [*Id.*] The ALJ explained that the opinions of both Dr. Bress and the state agency physicians were consistent with many of the Family Medical Care treatment records. [Tr. 18.] After discussing both of these opinions

---

[5] While the ALJ referred to the arthritis RFC in his decision, his citation to Exhibit 16F actually leads one to the physical RFC questionnaire.

8

with some detail, the ALJ turned to the opinion of Morris' treating physician, Dr. Irwin. [*See* Tr. 18.] The entirety of his reflection on Dr. Irwin's opinions is reprinted below:

> The arthritis residual functional capacity submitted by Douglass Irwin, M.D., is given partial weight inasmuch as it limits the claimant to essentially sedentary work activities as well (Exhibit 1F, 11F, 16F, 18F, 19F).

[Tr. 18.]  No more is said about the opinions of Dr. Irwin.

As Morris' treating physician, the ALJ was required to more thoroughly consider Dr. Irwin's opinion.  Furthermore, the ALJ failed to give "good reasons" for not giving Dr. Irwin's opinions controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2).  ALJ's are bound to be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.  Because the ALJ was not sufficiently specific in this instance, the case must be remanded so that the opinions of Dr. Irwin may, first, be more fully considered and, if again rejected, the reasons for that rejection may be more explicitly noted in the decision.

**B**

Morris also asserts the ALJ failed to properly consider her allegations of disabling pain. [R. 12-2 at 6-7.]  In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant.  20 C.F.R. § 404.1529.  To determine whether statements of a claimant are credible, the following two-part test is to be employed:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

9

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*citing* 20 C.F.R. § 416.929(a)) (internal citations omitted).  The following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'"  *Rogers,* 486 F.3d at 247.

Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant.  *Id.* (*citing Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981)).  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted).  Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence.  *Id*. at 249.

Morris testified that she is five feet and four inches tall and weighs 350 pounds [Tr. 29] and testified that she cannot work because of low back pain, hip pain, leg pain, arthritis, diabetes

10

mellitus, a coronary condition, high blood pressure, a right knee tear, breathing problems, a sleep disorder, and renal insufficiency. [Tr. 16, 29, 24-61.] Because of these impairments, Morris testified that she can only walk ten to twenty feet, stand for five minutes or sit for one hour at a time. [Tr. 44-45.] She also complains of not being able to grip things well, shortness of breath, pain in her leg radiating down to her ankle, and joint pain. [Tr. 41-42.]

The ALJ found that Morris' stated impairments may reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible. [Tr. 17.] The ALJ further found that Morris' reported daily activities and testimony about those activities was consistent with a sedentary lifestyle. [Tr. 17.] He found nothing in her testimony relating to these daily activities that called her credibility into question. Instead, he primarily based his negative credibility finding on his conclusion that the record evidence contradicted Morris' testimony on the following points.

First, the ALJ noted that Morris said she had no grip strength and frequently dropped things but that her medical examination revealed she had good grip strength. [Tr. 17, 51-52, 373.] Second, the ALJ recognized that Morris' "debilitating allegations" regarding both her right knee and left hip were not supported by the medical evidence. [Tr. 17, 39-42, 53-54, 239, 403-407.] Finally, the ALJ found that Morris' allegations regarding her back pain were exaggerated, noting that while "there is clinical evidence of lower disc disease and spurring of the endplates there were no acute osseous abnormalities." [Tr. 17, 303.]

Considering the above-cited inconsistencies between the medical evidence of record and Morris' testimony, the Court cannot say that the ALJ's opinion on Morris' credibility is not supported by substantial evidence. This is particularly true when one considers the deference

afforded to an ALJ's findings on issues of credibility. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Accordingly, the ALJ's decision on this point must be affirmed.

III

Thus, after reviewing the record, the Court finds that the ALJ erred by considering Dr. Irwin's opinions so summarily. The case will be remanded pursuant to 42 U.S.C. § 405(g) and, on remand, the ALJ should more thoroughly consider Dr. Irwin's opinions, clearly explain how much weight he gives to them, and if he chooses not to give them significant weight, provide good reasons for his decision.

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Morris' Motion for Summary Judgment [R. 12] is **GRANTED** in part and **DENIED** in part.

(2) The Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED** in part and **DENIED** in part.

(3) The case is **REMANDED** for further proceedings consistent with this Order.

(4) A judgment will be entered contemporaneously herewith**.**

This 2nd day of March, 2015

